Estado Libre Asociado de Puerto Rico
**TRIBUNAL DE APELACIONES**
**PANEL VI**

| | | |
|---|---|---|
| Ana C. Román Quiñones Agada Weber y Daisy Vázquez<br><br>Apelantes<br><br>vs.<br><br>Elizabeth Vázquez Vega, Ivelisse Vázquez Vega, Javier Vázquez Vega, Fulano de Tal, Mengano de Tal y Sutano de Tal<br><br>Apelados | TA2026AP00071 | **APELACIÓN** procedente del Tribunal de Primera Instancia, Sala Superior de Fajardo<br><br>Civil Núm.: LU2025CV00061<br><br>Sobre: División y/o Liquidación de Comunidad de Bienes Hereditarios; Declaración de Indignidad |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y la Jueza Prats Palerm.

Rivera Colón, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de enero de 2026.

Comparecen la Sra. Ana C. Román Quiñones, la Sra. Agada Weber y la Sra. Daisy Vázquez, (parte apelante, conjuntamente), quienes solicitan la revocación de la Sentencia Enmendada emitida el 17 de diciembre de 2025[1] por el Tribunal de Primera Instancia, Sala Superior de Fajardo (TPI o foro primario). Mediante el referido dictamen, el foro primario declaró No Ha Lugar la solicitud declaración de indignidad promovida por la parte apelante. En consecuencia, dispuso que las apelantes debían radicar de un pleito independiente para la liquidación y la partición de la comunidad hereditaria.

Surge del expediente ante nos que, el 19 de junio de 2025, la parte apelante presentó una Moción para Emplazar por Edicto, a la cual adjuntó una Declaración Jurada. En esencia, indicó que

---

[1] Notificada el 18 de diciembre de 2025.

efectuó una serie de gestiones para emplazar a la parte apelada, las cuales incluyeron comunicaciones directas con sus familiares, quienes les informaron que no tenían conocimiento de estos. A su vez, las apelantes detallaron que buscaron a los apelados en las redes sociales y otras plataformas digitales, pero no obtuvieron información referente a su dirección física o postal. Luego de examinar su moción, el 26 de junio de 2025, el foro primario emitió una Resolución, en la cual autorizó el emplazamiento por edicto, y eximió a las apelantes del requisito de notificación de la copia del emplazamiento y demanda a la última dirección conocida, según lo permite la Regla 4.6(a) de Procedimiento Civil, 32 LPRA Ap. V. R. 4.6. Posteriormente, ante la incomparecencia de los apelados, el 8 de septiembre de 2025, el foro primario emitió una Orden, en la cual decretó la anotación de rebeldía en contra de estos. A la luz de lo expuesto, prescindimos de la comparecencia de los apelados y procedemos a resolver. Véase Regla 7(B)(5) del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR __ (2025).

Examinado el recurso ante nos, la totalidad del expediente y el derecho aplicable, confirmamos la Sentencia apelada, en cuanto a la denegatoria de la petición de declaración de indignidad promovida por las apelantes. No obstante, revocamos el dictamen impugnado, respecto a la parte que ordenó la radicación de un pleito independiente para la liquidación y partición de la comunidad hereditaria, por los fundamentos que expondremos a continuación.

## I.

El 16 de abril de 2025, la Sra. Román Quiñones, la Sra. Weber y la Sra. Vázquez, viuda e hijas del causante el Sr. Juan E. Vázquez, instaron una Demanda sobre división de bienes hereditarios y declaración de indignidad en contra de la Sra.

Elizabeth Vázquez Vega, la Sra. Ivelisse Vázquez Vega, el Sr. Javier Vázquez Vega, quienes también son hijos del causante (parte apelada, conjuntamente). En síntesis, la parte apelante indicó que el Sr. Vázquez falleció el 1 de enero de 2023. En esa línea, alegó que este otorgó un testamento el 22 de mayo de 1996, en el cual, entre otros extremos, instituyó a sus cinco (5) hijos como herederos de la porción de la legítima estricta. Sin embargo, adujo que los apelados abandonaron a su padre, puesto que no le brindaron el apoyo necesario en momento cruciales de su vida. Por lo que, peticionó la declaración de indignidad en contra de estos.

Tiempo después, tras constatar las múltiples gestiones realizadas para emplazar directamente a la parte apelada, el 26 de junio de 2025, el foro primario emitió una Resolución, en la cual autorizó el emplazamiento mediante edicto, y eximió a las apelantes del requisito de notificación de la copia emplazamiento y demanda a la última dirección conocida. Con posterioridad, ante la incomparecencia de los apelados, el TPI emitió una Orden, mediante la cual decretó la anotación de rebeldía en contra de estos, y en efecto, señaló la tramitación del juicio para el 17 de septiembre de 2025.

Continuados los procesos judiciales, el foro primario celebró el juicio durante tres (3) días, a saber, el 17 de septiembre de 2025, el 2 y el 17 de octubre de 2025, en el cual declararon la Sra. Ana Celia Román, la Sra. Agada Weber y la Sra. Daisy Vázquez.

Examinada la totalidad de la prueba desfilada en dicho proceso, el 16 de octubre de 2025, el TPI emitió una Sentencia, notificada el 26 de noviembre de 2025[2], mediante la cual declaró No Ha Lugar la solicitud de indignidad promovida por las

---

[2] El TPI, por conducto de la Secretaría, expidió una Notificación de Sentencia por Edicto a los fines de que la parte apelada tuviera conocimiento de esta determinación.

apelantes. Consecutivamente, ordenó que las apelantes instaran un pleito independiente para adjudicar el asunto de liquidación y partición de la herencia.

Oportunamente, el 11 de diciembre de 2025, la parte apelante sometió una Moción en Solicitud de Determinaciones de Hechos y Conclusiones de Derecho Adicionales y Reconsideración. En primer lugar, peticionó que el tribunal sentenciador formulara unas determinaciones de hechos sobre la omisión del causante de no instituir a su cónyuge supérstite como heredera legitimaria. También, solicitó que se consignaran como hechos probados los gastos administrativos asumidos por la Sra. Agada Weber, de acuerdo con prueba documental sometida. Asimismo, argumentó que procede reconsiderar la denegatoria a la solicitud de indignidad de los apelados, pues razonó que la evidencia presentada apunta a la ausencia de vínculo con el causante. Por último, suplicó que se les permitiera ventilar el asunto sobre la liquidación y partición de la herencia en este mismo pleito.

Luego de examinar sus argumentos, el 17 de diciembre de 2025, el foro primario dictó una Sentencia Enmendada[3], en la cual procedió a incluir una determinación de hecho bajo el inciso 8(a) y además, modificó la determinación de hecho identificada bajo la numeración 11:

> 1) *El causante Juan Enrique Vázquez Rivera t/c/c Juan Vázquez Rivera falleció el 1 de enero de 2023 en Luquillo, Puerto Rico, según consta de la copia de la Certificación de Defunción emitido por el Registro Demográfico adscrito al Departamento de Salud de Puerto Rico (en adelante, el "Causante").*
>
> 2) *La codemandante Ana Celia Román Quiñones es la viuda del causante Juan Enrique Vázquez Rivera quienes contrajeron nupcias el 3 de enero de 1970 en la ciudad de Nueva York, Estados Unidos de América.*
>
> 3) *Las codemandantes Agada Weber, t/c/c Agada Vázquez Román y Daisy Vázquez son hijas del Causante y de la codemandante Román Quiñones.*

---

[3] Notificada al día siguiente.

*4) Los codemandados Elizabeth, Ivelisse y Javier, todos de apellidos Vázquez Vega, son hijos del Causante, producto de su matrimonio con su primera esposa Juana Vega, de quien se desconoce el segundo apellido.*

*5) El Causante falleció habiendo otorgado Testamento Abierto, mediante la Escritura Número Ciento Cuarenta y Uno (141), en Luquillo, Puerto Rico, el 22 de mayo de 1996, ante el notario Carlos L. Dávila Coca. El mismo consta inscrito en el Registro de Testamentos de la Oficina de Inspección de Notarías al tomo y folio 0236229, según la Certificación Acreditativa de Testamento expedida por el Registro de Competencias Notariales de la Oficina de Inspección de Notaría adscrito al Tribunal Supremo de Puerto Rico (en adelante, "Testamento").*

*6) En el Testamento, el Causante designó como albacea de su caudal hereditario a su hija, la codemandante Agada, quien oportunamente aceptó el cargo mediante documento juramentado.*

*7) El Causante instituyó como herederos en la porción de legítima estricta, conforme a las disposiciones del Código Civil de Puerto Rico del 1930 vigentes al momento del otorgamiento del Testamento, a sus hijas, las codemandantes Agada y Daisy, así como a los hijos de su primer matrimonio, los codemandados Elizabeth, Ivelisse y Javier.*

*8) En la porción de mejora y libre disposición, también sujetas a las disposiciones del Código Civil de Puerto Rico del 1930 vigentes al momento del otorgamiento del Testamento, el Causante instituyó como herederas a las codemandantes Agada y Daisy.*

*8(a) No empece a que el Causante manifestó encontrarse casado con la codemandante Ana Celia Román Quiñones, dicho instrumento público no contiene disposición alguna instituyéndola como heredera ni confiriéndole derecho sucesorio alguno, pese a su condición de cónyuge supérstite y heredera legitimaria.*

*9) A la fecha del fallecimiento del Causante, éste era titular y dueño con carácter ganancial por motivo de su matrimonio con la codemandante Román Quiñones del cincuenta por ciento (50%) del bien inmueble que consta inscrito en el Registro de la Propiedad cuya descripción registral es la siguiente: (en adelante, la "Propiedad"):*

*"RÚSTICA: Comunidad Ramos de Luquillo. Solar número ciento diecinueve "B" (119-B). Con una cabida de mil ciento setenta y uno punto dieciocho metros cuadrados (1,171.18 mc). En lindes por el Norte, con la parcela número ciento veintinueve "A" (129 A) de la comunidad. Por el Sur, con la parcela número ciento veintinueve "C" (129-C) de la comunidad. Por el Este, con la calle número once (11) de la comunidad. Por el Oeste, con la calle número diez (10) de la comunidad. Parcela radicada en el Barrio Pitahaya de Luquillo.*

*Consta inscrita al folio cuarenta y uno (41), del tomo ciento noventa y tres (193) de Luquillo, finca número diez mil quinientos sesenta y nueve (10,569), Registro de la Propiedad, Sección Primera de Fajardo. Número de Catastro: 120-097-011-44-001".*

*10) Según el informe de tasación preparado por David Ouvina Real Estate Appraisals PSC, el 25 de enero de 2023 y presentado en evidencia, el valor de la Propiedad, luego del fallecimiento del Causante, era de ciento treinta y tres mil dólares ($133,000.00), correspondiéndole a la participación ganancial del Causante en la Propiedad un valor de sesenta y seis mil quinientos dólares ($66,500.00).*

*11) Según el Relevo de Hacienda presentado en evidencia, el Causante, a su vez, era titular y dueño, con carácter ganancial por motivo de su matrimonio con la codemandante Román Quiñones, del cincuenta por ciento (50%) de los siguientes bienes muebles: (a) Vehículo de motor marca Nissan, modelo Pathfinder, color blanco, del año 2008 y tablilla HLG135, con un valor de tres mil dólares ($3,000.00), correspondiéndole a la participación del Causante mil quinientos dólares ($1,500.00); y (b) un vehículo de motor marca Hyundai, modelo Tucson, color rojo combinado, del año 2020 y tablilla JKF403, con un valor de veinte mil dólares ($20,000.00), el cual aún continúa pagando la Parte Demandante.*

*12) La codemandante Agada, en su capacidad de albacea del caudal hereditario del Causante, llevó a cabo diversos actos administrativos de los bienes que componen la comunidad hereditaria del Causante, habiéndolos sufragado ella de su pecunio. Los gastos incurridos son los siguientes: (a) gastos asociados al funeral por la cantidad de $9,403.70; (b) gastos de tasación del bien inmueble descrito en el párrafo 9, por la cantidad de $375.00; (c) gastos de reparación y mantenimiento del referido bien inmueble, ascendentes a $3,900.00; (d) honorarios de abogado y derechos arancelarios para gestionar las cartas testamentarias ante este Honorable Tribunal pagados al Lcdo. Gilberto Oliver Dávila, por la cantidad de $1,500.00.*

*13) Desde la fecha de fallecimiento del Causante, las codemandantes Ana Celia y Daisy han continuado pagando el préstamo número 1100011099, financiado a través de CooPACA, para la adquisición del vehículo de motor marca Hyundai, modelo Tucson del año 2020, detallado en el párrafo 11 (b). Hasta la fecha, dichas codemandantes han cubierto el pago de veintisiete (27) cuotas de dicha obligación, correspondientes a los meses de enero de 2023 a marzo de 2025, para un total de once mil seis cientos sesenta y cuatro dólares ($11,664.00), de los cuales $5,832.00 corresponden al caudal del Causante.*

*14) Durante su vida, y especialmente en su vejez, el Causante sufrió de enfermedades cardiacas y renales. Durante toda su vida, y especialmente durante su*

*enfermedad y sus últimos días, recibió atención médica, apoyo económico, acompañamiento y cuidados de manera constante y exclusiva de la Parte Demandante.*

*15) Según el testimonio de las codemandantes Agada y Daisy, luego de que el Causante se divorciara de la madre de los codemandados, estos no mantuvieron relación alguna ni estuvieron presentes en momentos importantes y relevantes de la vida del Causante. A lo largo de la vida de éste, los codemandados no procuraron su bienestar ni velaron por su salud física. Tampoco le ofrecieron el apoyo físico, emocional ni económico durante su enfermedad.*

*16) Las codemandantes declararon no haber presenciados encuentros físicos o que hubiese habido alguna comunicación telefónica entre éstos y el Causante.*

*17) No empecé a lo anterior, el Causante instituyó a los codemandados Elizabeth, Ivelisse y Javier, todos de apellidos Vázquez Vega, como herederos en el tercio de legítima estricta en su Testamento.*

*18) Según el testimonio de las codemandantes Agada y Daisy surge que, al presente, se desconoce del paradero la situación actual de los codemandados.*[4]

A la luz de la prueba desfilada durante el juicio, el TPI resolvió que no se configuraron los criterios establecidos en el Código Civil, *infra*, para declarar indignos a los apelados. Por último, reiteró que los asuntos concernientes a la liquidación de la herencia deben dilucidarse en un pleito independiente.

Inconforme, el 20 de enero de 2026, la parte apelada recurrió ante este Tribunal de Apelaciones mediante un escrito intitulado Recurso de Apelación, en el cual esbozó los siguientes señalamientos de error:

*Primer Error: Erró el Tribunal de Primera Instancia al declarar No Ha Lugar la solicitud de declaración de indignidad de los apelados, al aplicar incorrectamente la figura de la indignidad, exigir un estándar probatorio indebidamente restrictivo y considerar erróneamente determinante la ausencia de desheredación testamentaria del causante, cuando la indignidad es una figura autónoma que no depende de la voluntad del causante.*

*Segundo Error: Erró el Tribunal de Primera Instancia al abstenerse de adjudicar la liquidación y partición de la comunidad hereditaria y disponer que dicha controversia debía dilucidarse en un pleito*

---

[4] Entrada 26, a las págs. 1-5 del SUMAC TPI.

*independiente, a pesar de que fue debidamente solicitada en la demanda, estaba madura para adjudicación y surgía del mismo núcleo fáctico, en contravención a los principios de economía procesal y adjudicación completa de controversias.*

**II.**

**A.**

El Art. 1546 del Código Civil de Puerto Rico (2020)[5], Ley Núm. 55-2020, 31 LPRA sec. 10911, según enmendada (Código Civil (2020) o Ley Núm. 55-2020), dispone que "[l]a sucesión por causa de muerte es la transmisión de los derechos y de las obligaciones del causante que no se extinguen por su muerte". A tales efectos, el Art. 1622 de la referida legislación reconoce las siguientes personas como legitimarios, a saber: (a) los descendientes; (b) el cónyuge supérstite; y a falta de estos, (c) los ascendientes. 31 LPRA sec. 11162.

No obstante, el estado de derecho vigente contempla una serie de causales que pueden privar a los legitimarios de sus derechos hereditarios. En esa dirección, el Art. 1556 del Código Civil, *supra*, delimita aquellas circunstancias que permiten declarar indigna a una persona:

> **(a) la persona que abandona o maltrata física o sicológicamente al causante;**
>
> *(b) la persona convicta por haber atentado contra la vida del causante, de su cónyuge, de sus descendientes o de sus ascendientes, del ejecutor o de otro llamado a la herencia cuya muerte favorezca en la sucesión al indigno;*
>
> *(c) la persona convicta por acusar o denunciar falsamente al causante de la comisión de un delito que conlleva una pena grave;*
>
> *(d) la persona que deja de cumplir durante tres (3) meses consecutivos o seis (6) alternos con la obligación, impuesta administrativa o judicialmente, de alimentar al causante;*

---

[5] Puntualizamos que, el causante falleció el 1 de enero de 2023, por lo que procede hacer referencia al Código Civil (2020), *supra*, en atención a los señalamientos de error levantados por las apelantes. Para fines de la discusión, precisamos que no estamos interpretando las solemnidades del testamento otorgado por el Sr. Vázquez el 22 de mayo de 1996, por lo que, no requerimos en este momento aludir al derogado Código Civil (1930).

*(e) la persona que, mediante dolo, intimidación, fraude o violencia induce o impide al causante otorgar, revocar o modificar su testamento; o el que, conociendo estos hechos, los utiliza para su beneficio; y*

*(f) la persona que destruye, oculta o altera el testamento del causante.* 31 LPRA sec. 10973. (Énfasis nuestro).

Sobre este particular, el tratadista Gómez Tejera explica que la declaración de indignidad constituye una sanción por una ofensa cometida contra el causante:

*[L]a indignidad constituye una sanción provista por el legislador para una ofensa cometida contra el causante, y se funda en una presunción controvertible: que el causante hubiera excluido de su herencia al indigno, de haber conocido su conducta reprochable.* E. González Tejera, <u>Derecho de Sucesiones: La sucesión intestada</u>, San Juan, Ed. Universidad de Puerto Rico, 2001, Tomo I, a la pág. 151.

En esa línea, la profesora Ortega Vélez precisa aquellas circunstancias en las que no procede la aplicación de esta figura:

*La indignidad es una capacidad relativa a la conducta del indigno con el causante que no tendrá efecto si existía en la vida del causante, este la conocía y no desheredó al hacer testamento: o si conociendo la causa después del testamento perdona al indigno en documento público.* R. Ortega Vélez, <u>Sobre Donaciones, Herencias y Testamentos</u>, San Juan, Ediciones SITUM, 2021, a la pág. 25.

De conformidad con lo anterior, el Art. 1557 de la Ley Núm. 55-2020, *supra*, preceptúa que la calificación de la indignidad se atiende en el momento de la delación. 31 LPRA sec. 10974. En este trámite, "[s]olamente las personas que resultan favorecidas por la declaración de indignidad, pueden invocarla". Art. 1558, Código Civil, *supra*, 31 LPRA sec. 10975. Así, pues, una vez declarada, sus efectos se retrotraen al momento de la delación, lo cual priva a la persona indigna de la herencia o del legado y, en su caso, de la condición de legitimaria. Íd.

**B.**

La Regla 42. 2 de Procedimiento Civil, 32 LPRA Ap. V, R. 42. 2, establece el estándar de deferencia hacia aquellas determinaciones de hechos formuladas por el foro primario:

> ***Las determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de las personas testigos. Las determinaciones de hechos de un comisionado o comisionada, en tanto y en cuanto el tribunal las adopte, serán consideradas como determinaciones de hechos del tribunal***. (Énfasis nuestros).

Así pues, "los tribunales apelativos otorgarán gran deferencia a las determinaciones de hechos, la apreciación de la prueba testifical y las adjudicaciones de credibilidad que hacen los tribunales de primera instancia". *SLG Rivera-Pérez v. SLG Díaz-Doe et al.*, 207 DPR 636, 657 (2021). Véanse, también, *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 771 (2013); *Laboy Roque v. Pérez y otros*, 181 DPR 718, 744 (2011). Ante la ausencia de error manifiesto, prejuicio, parcialidad o pasión, los foros apelativos debemos abstenernos de intervenir en la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el tribunal sentenciador. *Peña Rivera v. Pacheco Caraballo*, 213 DPR 1009, 1024 (2024); *Ortiz Ortiz v. Medtronic*, 209 DPR 759, 778 (2022).

En virtud de esta normativa, corresponde reiterar que, la determinación de credibilidad del foro primario "es merecedora de gran deferencia por parte del tribunal apelativo por cuanto es ese juzgador quien, de ordinario, está en mejor posición para aquilatar la prueba testifical desfilada, ya que él fue quien oyó y vio declarar a los testigos". *Argüello v. Argüello*, 155 DPR 62, 79 (2001). No obstante, por su parte, los tribunales revisores están en una posición limitada, ya que solo tienen ante sí los récords mudos e inexpresivos, por lo que, deben respeto a la adjudicación de credibilidad realizada por el juzgador primario de los hechos. *S.L.G. Rivera Carrasquillo v. A.A.A.*, 177 DPR 345, 356 (2009); *Trinidad v. Chade*, 153 DPR 280, 291 (2001).

Ahora bien, esta norma no es irrestricta. La deferencia judicial cede cuando se identifica un error manifiesto, lo cual significa que "la apreciación de esa prueba se distancia de la realidad fáctica o es inherentemente imposible o increíble". *Ortiz Ortiz v. Medtronic, supra,* a la pág. 779*; Pueblo v. Toro Martínez,* 200 DPR 834, 859 (2018) (citando a *Pueblo v. Irizarry,* 156 DPR 780, 816 (2002)). Igualmente, no opera la deferencia judicial si "existe un conflicto entre las conclusiones a las cuales llegó el Tribunal de Primera Instancia y el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida. *Peña Rivera v. Pacheco Caraballo; supra,* a la pág. 1025*; Ortiz Ortiz v. Medtronic, supra,* a la pág. 779.

## C.

Nuestro ordenamiento procesal, "permite que en una demanda o contestación se puedan acumular todas las reclamaciones que un demandante o demandado tenga contra la parte adversa, estén o no éstas relacionadas entre sí". *Márquez v. Barreto,* 143 DPR 137, 144 (1997). Cónsono con lo anterior, la Regla 14.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 14.1, instaura la acumulación de reclamaciones, según lee a continuación:

> *Cualquier parte podrá acumular en su alegación tantas reclamaciones independientes o alternativas como tenga contra la parte adversa.*

De manera similar, la Regla 14.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 14.2, establece la siguiente normativa referente a acumulación de reclamaciones contingentes:

> *Cuando se trate de una reclamación que dependa para su ejercicio de que se prosiga otra reclamación hasta su terminación, estas dos reclamaciones podrán acumularse en el mismo pleito. El tribunal no resolverá la reclamación contingente hasta tanto se resuelva la reclamación principal.*

El Tribunal Supremo de Puerto Rico ha precisado que este tipo de reclamación es usual en la práctica procesal. No obstante, su única limitación es que el tribunal no podrá resolverla hasta que ventile la reclamación principal de la cual depende, o sea, hasta que la sentencia en la acción principal advenga final y firme. *Inmob. Baleares et al. v. Benabe et al.*, 214 DPR 1109, 1125 (2024). Véase, también, *Márquez v. Barreto*, *supra*, a la pág. 144. Estos mecanismos procesales procuran el acceso a los tribunales y el adecuado manejo de los procesos, de forma tal que se garantice una solución justa, rápida y económica de todo el procedimiento. Véase Regla 1 de Procedimiento Civil, 32 LPRA Ap. V, R. 1.

### III.

En el recurso de epígrafe, la parte apelante nos invita a revocar la Sentencia, objeto de revisión judicial, puesto que considera que el TPI erró al determinar que no procede la declaración de indignidad en contra de los apelados. Aduce, también, que el foro primario incidió al resolver que el asunto relativo a la liquidación y la partición de la comunidad hereditaria deberá atenderse en un pleito independiente.

Luego de efectuar un análisis sosegado del recurso que nos ocupa, determinamos que el TPI actuó correctamente al denegar la solicitud de declaración de indignidad promovida por la parte apelante. Adelantamos que, en cuanto a este extremo, el dictamen es consistente con los parámetros legales preceptuados en el derecho de sucesiones puertorriqueño, y a su vez, descansa en la totalidad de la prueba sopesada por el tribunal sentenciador. Veamos.

Surge del expediente ante nos que, el foro primario celebró un juicio en el cual testificaron las apelantes, la Sra. Ana Celia Román, la Sra. Agada Weber y la Sra. Daisy Vázquez. Estas declararon que la parte apelada incurrió en conducta constitutiva

de abandono del causante. Sin embargo, tras examinar la prueba presentada, el tribunal sentenciador emitió el siguiente razonamiento:

> ***[D]el testimonio de las codemandantes en sala surge que ellas nunca presenciaron ni tuvieron conocimiento de que, luego de que el Causante se divorciara de su madre (la de los codemandados), los codemandados se relacionaran o tuvieran algún tipo de comunicación con éste, no es menos cierto que éstas, a preguntas del Tribunal, no pudieron asegurar que dicha comunicación hubiese ocurrido sin su conocimiento o a sus espaldas. Incluso desconocen si esto ocurrió entre el periodo comprendido entre la fecha de divorcio del Causante de la madre de los codemandados y el nacimiento de las codemandantes Agada y Daisy.***
>
> ***Cabe mencionar primeramente que la persona llamada a desheredar es el testador y sólo se podrá desheredar mediante testamento y únicamente por alguna de las razones expresamente reconocidas por ley. Las causales aludidas constan en el Art. 778 del derogado Código Civil, 31 LPRA sec. 2456. No obstante, en el presente caso y no empecé a lo expresado por las codemandantes Agada y Daisy sobre la alegada conducta de abandono y desinterés de los codemandados, el Causante los instituyó como herederos en el tercio de legítima estricta en su Testamento. Sobre este particular, a pesar de que las codemandantes declararon que su padre tenía la intención de cambiar su testamento para desheredar a los codemandados, la realidad es que no lo hizo. Ello, aun cuando las circunstancias que evitaron que esto sucediera, según las codemandantes, no fueron atribuibles a su padre, sino al notario.*** (Énfasis nuestro).[6]

A la luz de lo anterior, colegimos que la parte apelante no demostró mediante la prueba desfilada en el juicio[7] que median las causales para declarar indignos a los apelados, de conformidad con el Art. 1556(a) del Código Civil (2020), *supra*. Así, pues, razonamos que la mera alegación de abandono sin brindar un

---

[6] Entrada 26 del SUMAC TPI, a las págs. 8-9.

[7] Conviene precisar que, en los casos civiles, salvo ciertas excepciones, la parte demandante, tiene el peso de la prueba, según dispone la Regla 110(a) de Evidencia, 32 LPRA Ap. VI, R. 10.1. En estos reclamos, opera el estándar probatorio de preponderancia contenido en la Regla 110(f) de Evidencia de Puerto Rico:

> *En los casos civiles, la decisión de la juzgadora o del juzgador se hará mediante la preponderancia de la prueba a base de criterios de probabilidad, a menos que exista disposición al contrario.*

contexto preciso al respecto impide al tribunal declarar la indignidad en contra de la parte apelada. Recordemos, también, que, la indignidad no surtirá efecto: (1) si existía en la vida del causante, (2) este la conocía y (3) no los desheredó del testamento, como ocurre en el caso presente. Véase R. Ortega Vélez, *Sobre Donaciones, Herencias y Testamentos*, supra, a la pág. 25.

Ante este contexto, no identificamos las circunstancias jurídicas que nos motiven a resolver que los apelados incurrieron en conducta que amerita la declaración de indignidad en contra de estos. En virtud de lo anterior, concluimos que, respecto a este asunto, la determinación es conforme al marco legal discutido en el acápite anterior, y está respaldada en la totalidad de la prueba documental y oral presentada por las apelantes. A su vez, responde a un adecuado ejercicio de la apreciación y la adjudicación de la prueba por parte del foro primario, el cual merece nuestra deferencia. Véase Regla 42.2 de Procedimiento Civil, *supra*. Por tanto, confirmamos la Sentencia impugnada en cuanto la denegatoria de la petición de indignidad promovida por la parte apelada.

Por último, las apelantes señalan que el TPI erró al disponer que deben radicar un pleito independiente para dilucidar el asunto sobre la liquidación y la partición de la herencia. Le asiste la razón. Conviene recordar que, nuestro ordenamiento jurídico permite la acumulación de varias causas de acción en un mismo pleito. De tal modo, el estado de derecho vigente garantiza el acceso a los tribunales y una solución justa, rápida y económica de los procedimientos. Véanse Reglas 1 y 14.1 de Procedimiento Civil, *supra*. En vista de ello, revocamos el dictamen apelado en cuanto a este proceder, y consecuentemente, disponemos que en este mismo pleito el foro primario deberá atender el asunto de la liquidación y la partición de la comunidad hereditaria.

**IV.**

Por los fundamentos que anteceden, los que hacemos formar parte de este dictamen, confirmamos la Sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Fajardo, en cuanto a la denegatoria de la petición de indignidad. No obstante, revocamos el dictamen apelado, respecto a la parte que ordenó la radicación de un pleito independiente para la liquidación y partición de la comunidad hereditaria. En consecuencia, disponemos que dicho asunto deberá atenderse en este mismo pleito. Se devuelve el caso al foro primario para la continuidad de los procedimientos.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones